**COMPL**
Scott S. Thomas, NV Bar No. 7937
sst@paynefears.com
Sarah J. Odia, NV Bar No. 11053
sjo@paynefears.com
PAYNE & FEARS LLP
6385 S. Rainbow Blvd., Suite 220
Las Vegas, Nevada 89118
Telephone: (702) 851-0300
Facsimile: (702) 851-0315

Attorneys for CENTEX HOMES

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CENTEX HOMES, a Nevada general partnership,<br><br>    Plaintiff,<br><br>    v.<br><br>FINANCIAL PACIFIC INSURANCE COMPANY, a California corporation; FIRST SPECIALTY INSURANCE CORPORATION, a Missouri corporation GREENWICH INSURANCE COMPANY, a Connecticut corporation; INTERSTATE FIRE & CASUALTY COMPANY, an Illinois corporation; LEXINGTON INSURANCE COMPANY, a Delaware corporation; NAVIGATORS SPECIALTY INSURANCE COMPANY, a New York corporation; SCOTTSDALE INDEMNITY COMPANY, an Ohio corporation; ST. PAUL FIRE & MARINE INSURANCE COMPANY, a Connecticut corporation; NATIONAL FIRE & MARINE INSURANCE COMPANY, a Nebraska corporation; IRONSHORE SPECIALTY INSURANCE COMPANY, an Arizona corporation; and ZURICH AMERICAN INSURANCE COMPANY, a New York corporation,<br><br>    Defendants. | Case No.:<br><br><br>**CENTEX HOMES' COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT;**<br><br>**(2) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br><br>**(3) VIOLATIONS OF NEVADA'S UNFAIR CLAIMS SETTLEMENT PRACTICES ACT, NEV. REV. STAT. ANN. § 686A.310; AND**<br><br>**(4) DECLARATORY RELIEF—DUTY TO DEFEND.**<br><br>**JURY DEMAND** |

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

Plaintiff Centex Homes ("Centex") alleges as follows:

**PARTIES**

1.     At all times mentioned herein, Centex was and is a Nevada general partnership with its principal place of business in Atlanta, Georgia.  The partners of Centex Homes are (a) Centex Real Estate Corporation, (b) Nomas LLC and (c) Centex International II, LLC.  Centex is, and at all relevant times was, authorized to do and doing business in the State of Nevada.

2.     At all relevant times, Nomas LLC was and is a Nevada limited liability company with its principal place of business in Atlanta, Georgia.

3.     At all relevant times herein, Centex International II, LLC, was and is a Nevada limited liability company with its principal place of business in Atlanta, Georgia.

4.     At all relevant times, the sole member of Centex LLC was and is Centex Home Corporation, which is a Michigan Corporation with its principal place of business in Atlanta, Georgia.

5.     At all relevant times, Centex Real Estate Corporation ("Centex RE Corp.") was and is a Nevada corporation with its principal place of business in Atlanta, Georgia.

6.     Plaintiff is informed and believes, and on that basis alleges, that Defendant Financial Pacific Insurance Company ("Financial Pacific") at all relevant times was and is a California corporation with its principal place of business in Iowa.  Upon information and belief, Financial Pacific is and was at all relevant times eligible to do and doing business as an insurer in the State of Nevada.

7.     Plaintiff is informed and believes, and on that basis alleges, that Defendant First Specialty Insurance Corporation ("First Specialty") at all relevant times was and is a Missouri corporation with its principal place of business in Missouri.  Upon information and belief, First Specialty is and was at all relevant times eligible to do and doing business as an insurer in the State of Nevada.

8.     Plaintiff is informed and believes, and on that basis alleges, that Defendant Greenwich Insurance Company ("Greenwich") at all relevant times was and is Delaware corporation with its principal place of business in Connecticut.  Upon information and belief,

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

Greenwich is and was at all relevant times eligible to do and doing business as an insurer in the State of Nevada.

9.      Plaintiff is informed and believes, and on that basis alleges, that Defendant Interstate Fire & Casualty Company ("Interstate") at all relevant times was and is an Illinois corporation with its principal place of business in Illinois.  Upon information and belief, Interstate is and was at all relevant times eligible to do and doing business as an insurer in the State of Nevada.

10.      Plaintiff is informed and believes, and on that basis alleges, that Defendant Lexington Insurance Company ("Lexington") at all relevant times was and is a Delaware corporation with its principal place of business in Massachusetts.  Upon information and belief, Lexington is and was at all relevant times eligible to do and doing business as an insurer in the State of Nevada.

11.       Plaintiff is informed and believes, and on that basis alleges, that Defendant Navigators Specialty Insurance Company ("Navigators") at all relevant times was and is New York corporation with its principal place of business in New York.  Upon information and belief, Navigators is and was at all relevant times eligible to do and doing business as an insurer in the State of Nevada.

12.      Plaintiff is informed and believes, and on that basis alleges, that Defendant Scottsdale Insurance Company ("Scottsdale") at all relevant times was and is an Ohio corporation with its principal place of business in Ohio.  Upon information and belief, Scottsdale is and was at all relevant times eligible to do and doing business as an insurer in the State of Nevada.

13.      Plaintiff is informed and believes, and on that basis alleges, that Defendant St. Paul Fire & Marine Insurance Company ("St. Paul") at all relevant times was and is a Connecticut corporation with its principal place of business in Connecticut.  Upon information and belief, St. Paul is and was at all relevant times eligible to do and doing business as an insurer in the State of Nevada.

14.      Plaintiff is informed and believes, and on that basis alleges, that Defendant National Fire & Marine Insurance Company ("National Fire") at all relevant times was and is a

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

Nebraska corporation with its principal place of business in Nebraska. Upon information and belief, National Fire is and was at all relevant times eligible to do and doing business as an insurer in the State of Nevada.

15.     Plaintiff is informed and believes, and on that basis alleges, that Defendant Ironshore Specialty Insurance Company ("Ironshore") at all relevant times was and is an Arizona corporation with its principal place of business in Massachusetts.  Upon information and belief, Ironshore is and was at all relevant times eligible to do and doing business as an insurer in the State of Nevada.

16.     Plaintiff is informed and believes, and on that basis alleges, that Defendant Zurich American Insurance Company ("Zurich") at all relevant times was and is a New York corporation with its principal place of business in Illinois.  Upon information and belief, Zurich is and was at all relevant times eligible to do and doing business as an insurer in the State of Nevada.

## JURISDICTION AND VENUE

17.     This Court has original jurisdiction over this action founded on diversity of citizenship pursuant 28 U.S.C. § 1332, because the matters in controversy exceed $75,000.00, exclusive of interest and costs, and because complete diversity exists between Centex and Defendants.

18.     Venue is proper in this Court in accordance with 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

**The Miramonte & Silver Terrace Developments**

19.     Centex is a developer and homebuilder that participated in the construction of two residential development known as Miramonte and Silver Terrace (the "Developments"), located in Reno, Nevada.

20.     Construction of the Miramonte development began in 2006 and continued through 2009.

21.     Construction of the Silver Terraces development began in 2005 and continued through 2007.

22.     Centex performed no work on the Developments; subcontractors performed all of

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

the work.

23.     All Seasons Glass ("All Seasons") contracted with Centex to, among other things, supply and install windows in homes in the Developments.

24.     Advanced Countertop Design, Inc. ("Advanced Countertop") contracted with Centex to, among other things, supply and install kitchen and bathroom countertops on the homes in the Developments.

25.     American Woodmark Corporation "American") contracted with Centex to, among other things, supply and install cabinets in homes in the Developments.

26.     Cavallero Heating & Air Conditioning, Inc., ("Cavallero") contracted with Centex to, among other things, supply and install HVAC systems in homes at the Development.

27.     Dan Mills Construction, Inc. ("Mills") contracted with Centex to, among other things, perform framing work on the homes in the Developments.

28.     Ira Hanson & Sons Plumbing & Heating ("Hanson") contracted with Centex to, among other things, install plumbing systems in the homes in the Developments.

29.     J&L Windows, Inc. ("J&L") contracted with Centex to, among other things, supply and install windows in the homes in the Developments.

30.     JP Construction Company ("JP") contracted with Centex to, among other things, install concrete foundations in the Developments.

31.     Pinnacle Drywall & Stucco ("Pinnacle") contracted with Centex to, among other things, install drywall in the homes in the Developments.

32.     Premier Landscaping ("Premier") contracted with Centex to, among other things, perform landscaping and landscaping-related work at homes in the Developments.

33.     Republic Electric, Inc. (Republic") contracted with Centex to, among other things, install electrical systems in homes in the Developments.

34.     Riddo Construction Co., Inc. ("Riddo") contracted with Centex to, among other things, perform finish carpentry in homes in the Developments.

35.     Scarecrow Lath & Plaster, Inc. ("Scarecrow") contracted with Centex to, among other things, install stucco systems in the homes in the Developments.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

36. Sierra General Contractors ("Sierra") contracted with Centex to perform framing work on the homes in the Developments.

37. Silverado Excavating ("Silverado") contracted with Centex to perform excavating and fine grading work on the Developments.

38. Sunworld Landscape, LLC ("Sunworld") contracted with Centex to perform landscaping and landscaping-related work at homes in the Developments.

**The Financial Pacific Policies**

39. Pinnacle, Riddo, Scarecrow and Sierra each performed work on homes at the Developments pursuant to written subcontracts that each of them entered into with Centex.

40. Each subcontract required Riddo, Sierra, Scarecrow, and Pinnacle to maintain commercial general liability insurance, and to name "Centex Homes, a Nevada general partnership, Centex Real Estate Corporation, a Nevada corporation, and the owner of the Site if other than Centex Homes, their respective officers, directors, partners, members and employees, as additional insureds" under those insurance policies.

41. Riddo, Sierra, Scarecrow and Pinnacle obtained the following commercial general liability policies from Financial Pacific ("the Financial Pacific Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| Financial Pacific | 170546B | 06/01/05 – 06/01/06 | Pinnacle | Centex |
| Financial Pacific | 165937C | 07/22/02 – 07/22/07 | Riddo | Centex |
| Financial Pacific | 163655F | 06/01/06 – 06/01/07 | Sierra | Centex |
| Financial Pacific | 166133C | 09/01/04 – 09/01/05 | Scarecrow | Centex |
| Financial Pacific | 166133D | 09/01/05 – 09/01/06 | Scarecrow | Centex |

42. The Financial Pacific Policies were endorsed to cover Centex as an "additional insured" with respect to liability arising out of each named insured's work.

43. The Financial Pacific Policies require Financial Pacific to defend Centex against claims that create potential liability for covered property damage or bodily injury.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

44.     The Financial Pacific Policies were in effect during Pinnacle's, Riddo's, Scarecrow's and Sierra's operations at the Developments.

**The First Specialty Policies**

45.     J&L performed work on homes at the Developments pursuant to written subcontracts that each of them entered into with Centex.

46.     The subcontract required J&L to maintain commercial general liability insurance, and to name "Centex Homes, a Nevada general partnership, Centex Real Estate Corporation, a Nevada corporation, and the owner of the Site if other than Centex Homes, their respective officers, directors, partners, members and employees, as additional insureds" under those insurance policies.

47.     J&L obtained the following commercial general liability policies from First Specialty ("the First Specialty Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| First Specialty | IRG57018 | 09/20/04 – 09/20/05 | J&L | Centex |
| First Specialty | IRG57018-1 | 09/20/05 – 09/20/06 | J&L | Centex |

48.     The First Specialty Policies were endorsed to cover Centex as an "additional insured" with respect to liability arising out of each named insured's work.

49.     The First Specialty Policies require First Specialty to defend Centex against claims that create potential liability for covered property damage or bodily injury.

50.     The First Specialty Policies were in effect during J&L's operations at the Developments.

**The Greenwich Policies**

51.     American Woodmark performed work on homes at the Developments pursuant to written subcontracts that each of them entered into with Centex.

52.     The subcontract required American Woodmark to maintain commercial general liability insurance, and to name "Centex Homes, a Nevada general partnership, Centex Real Estate Corporation, a Nevada corporation, and the owner of the Site if other than Centex Homes, their

respective officers, directors, partners, members and employees, as additional insureds" under those insurance policies.

53.    American Woodmark obtained the following commercial general liability policies from Greenwich ("the Greenwich Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| Greenwich | RGG9437011-02 | 03/01/06 – 03/01/07 | American Woodmark | Centex |
| Greenwich | RGG943701103 | 03/01/07 – 03/01/08 | American Woodmark | Centex |
| Greenwich | RGG943701104 | 03/01/08 – 03/01/09 | American Woodmark | Centex |
| Greenwich | RGG9437011 | 03/01/09 – 03/01/10 | American Woodmark | Centex |

54.    The Greenwich Policies were endorsed to cover Centex as an "additional insured" with respect to liability arising out of each named insured's work.

55.    The Greenwich Policies require Greenwich to defend Centex against claims that create potential liability for covered property damage or bodily injury.

56.    The Greenwich Policies were in effect during American Woodmark's operations at the Development.

**The Interstate Policies**

57.    Dan Mills performed work on homes at the Developments pursuant to written subcontracts that each of them entered into with Centex.

58.    The subcontract required Dan Mills to maintain commercial general liability insurance, and to name "Centex Homes, a Nevada general partnership, Centex Real Estate Corporation, a Nevada corporation, and the owner of the Site if other than Centex Homes, their respective officers, directors, partners, members and employees, as additional insureds" under those insurance policies.

59.    Dan Mills obtained the following commercial general liability policies from Interstate ("the Interstate Policies"):

/ / /

/ / /

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| Interstate | AGL01400161 | 04/09/05 – 09/09/06 | Dan Mills | Centex |
| Interstate | SGL01000082 | 04/09/06 – 10/09/07 | Dan Mills | Centex |

60.     The Interstate Policies were endorsed to cover Centex as an "additional insured" with respect to liability arising out of each named insured's work.

61.     The Interstate Policies require Interstate to defend Centex against claims that create potential liability for covered property damage or bodily injury.

62.     The Interstate Policies were in effect during Dan Mills' operations at the Developments.

**The Lexington Policies**

63.     Cavallero, Hanson, Republic, and Sunworld each performed work on homes at the Developments pursuant to written subcontracts that each of them entered into with Centex.

64.     Each subcontract required Cavallero, Hanson, Republic, and Sunworld to maintain commercial general liability insurance, and to name "Centex Homes, a Nevada general partnership, Centex Real Estate Corporation, a Nevada corporation, and the owner of the Site if other than Centex Homes, their respective officers, directors, partners, members and employees, as additional insureds" under those insurance policies.

65.     Cavallero, Ira Hanson, Republic, and Sunworld obtained the following commercial general liability policies from Lexington ("the Lexington Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| Lexington | 2606688 | 03/01/05 – 03/01/06 | Cavallero | Centex |
| Lexington | 6119295 | 03/01/06 – 03/01/07 | Cavallero | Centex |
| Lexington | 1144317 | 04/01/05 – 04/01/06 | Ira Hanson | Centex |
| Lexington | 1144469 | 05/01/05 – 05/01/06 | Republic | Centex |
| Lexington | 8762037 | 05/31/06 – 05/31/07 | Republic | Centex |
| Lexington | 8762223 | 05/31/07 – 05/31/08 | Republic | Centex |
| Lexington | 1141189 | 06/04/02 – 06/04/03 | Sunworld | Centex |

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| Lexington | 1142167 | 06/04/03 – 06/04/04 | Sunworld | Centex |
| Lexington | 1143370 | 06/04/04 – 06/04/05 | Sunworld | Centex |
| Lexington | 1144579 | 06/04/05 – 06/04/06 | Sunworld | Centex |
| Lexington | 8762039 | 06/04/06 – 06/04/07 | Sunworld | Centex |

66.     The Lexington Policies were endorsed to cover Centex as an "additional insured" with respect to liability arising out of each named insured's work.

67.     The Lexington Policies require Lexington to defend Centex against claims that create potential liability for covered property damage or bodily injury.

68.     The Lexington Policies were in effect during Cavallero's, Ira Hanson's, Republic's, and Sunworld's operations at the Developments.

**The Navigators Policies**

69.     J&L and Silverado performed work on homes at the Developments pursuant to written subcontracts that each of them entered into with Centex.

70.     The subcontract required J&L to maintain commercial general liability insurance, and to name "Centex Homes, a Nevada general partnership, Centex Real Estate Corporation, a Nevada corporation, and the owner of the Site if other than Centex Homes, their respective officers, directors, partners, members and employees, as additional insureds" under those insurance policies.

71.     J&L and Silverado obtained the following commercial general liability policies from Navigators ("the Navigators Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| Navigators | SF06CGL003096-01 | 06/08/07 – 11/13/07 | J&L | Centex |
| Navigators | SF06CGL003096-00 | 06/08/06 – 06/08/07 | J&L | Centex |
| Navigators | OC07CGL00771700 | 3/24/07 – 3/24/08 | Silverado | Centex |

72.     The Navigators Policies were endorsed to cover Centex as an "additional insured" with respect to liability arising out of each named insured's work.

73.     The Navigators Policies require Navigators to defend Centex against claims that create potential liability for covered property damage or bodily injury.

74.     The Navigators Policies were in effect during J&L and Silverado's operations at the Developments.

**The Scottsdale Policies**

75.     All Seasons performed work on homes at the Developments pursuant to written subcontracts that each of them entered into with Centex.

76.     The subcontract required All Seasons to maintain commercial general liability insurance, and to name "Centex Homes, a Nevada general partnership, Centex Real Estate Corporation, a Nevada corporation, and the owner of the Site if other than Centex Homes, their respective officers, directors, partners, members and employees, as additional insureds" under those insurance policies.

77.     All Seasons obtained the following commercial general liability policies from Scottsdale ("the Scottsdale Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| Scottsdale | CLS1430237 | 01/22/07 – 01/22/08 | All Seasons | Centex |
| Scottsdale | CLS1324419 | 01/22/08 – 01/22/09 | All Seasons | Centex |

78.     The Scottsdale Policies were endorsed to cover Centex as an "additional insured" with respect to liability arising out of each named insured's work.

79.     The Scottsdale Policies require Scottsdale to defend Centex against claims that create potential liability for covered property damage or bodily injury.

80.     The Scottsdale Policies were in effect during All Season's operations at the Developments.

**The St. Paul Policies**

81.     Premier performed work on homes at the Developments pursuant to written subcontracts that each of them entered into with Centex.

82.     The subcontract required Premier to maintain commercial general liability

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

insurance, and to name "Centex Homes, a Nevada general partnership, Centex Real Estate Corporation, a Nevada corporation, and the owner of the Site if other than Centex Homes, their respective officers, directors, partners, members and employees, as additional insureds" under those insurance policies.

83.     Premier obtained the following commercial general liability policies from St. Paul ("the St. Paul Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|--------------|---------------|---------------|--------------------|
| St. Paul | GL08100458 | 11/03/03 – 11/08/08 | Premier | Centex |

84.     The St. Paul Policies were endorsed to cover Centex as an "additional insured" with respect to liability arising out of each named insured's work.

85.     The St. Paul Policies require St. Paul to defend Centex against claims that create potential liability for covered property damage or bodily injury.

86.     The St. Paul Policies were in effect during Premier's operations at the Developments.

**The National Fire Policies**

87.     JP and Silverado performed work on homes at the Development pursuant to written subcontracts that each of them entered into with Centex.

88.     The subcontract required JP and Silverado to maintain commercial general liability insurance, and to name "Centex Homes, a Nevada general partnership, Centex Real Estate Corporation, a Nevada corporation, and the owner of the Site if other than Centex Homes, their respective officers, directors, partners, members and employees, as additional insureds" under those insurance policies.

89.     JP and Silverado obtained the following commercial general liability policies from National Fire ("the National Fire Policies"):

/ / /

/ / /

/ / /

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| National Fire | 72LPS000460 | 3/24/06 – 3/24/07 | Silverado | Centex |
| National Fire | 72LPE697118 | 2/18/05 – 2/18/06 | JP | Centex |
| National Fire | 72LPE697186 | 2/18/06 – 2/18/07 | JP | Centex |

90.     The National Fire Policies were endorsed to cover Centex as an "additional insured" with respect to liability arising out of each named insured's work.

91.     The National Fire Policies require National Fire to defend Centex against claims that create potential liability for covered property damage or bodily injury.

92.     The National Policies were in effect during JP and Silverado's operations at the Development.

**The Ironshore Policy**

93.     Silverado performed work on homes at the Development pursuant to written subcontracts that each of them entered into with Centex.

94.     The subcontract required Silverado to maintain commercial general liability insurance, and to name "Centex Homes, a Nevada general partnership, Centex Real Estate Corporation, a Nevada corporation, and the owner of the Site if other than Centex Homes, their respective officers, directors, partners, members and employees, as additional insureds" under those insurance policies.

95.     Silverado obtained the following commercial general liability policy from Ironshore ("the Ironshore Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| Ironshore | IRH00CCE0805001 | 3/24/08 – 3/24/09 | Silverado | Centex |

96.     The Iroshore Policy was endorsed to cover Centex as an "additional insured" with respect to liability arising out of Silverado's work.

97.     The Ironshore Policy required Ironshore to defend Centex against claims that create potential liability for covered property damage or bodily injury.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

98.     The Ironshore Policy was in effect during Silverado's operations at the Development.

**The Zurich Policies**

99.     Advanced Countertop performed work on homes at the Development pursuant to written subcontracts that each of them entered into with Centex.

100.     The subcontract required Advanced Countertop to maintain commercial general liability insurance, and to name "Centex Homes, a Nevada general partnership, Centex Real Estate Corporation, a Nevada corporation, and the owner of the Site if other than Centex Homes, their respective officers, directors, partners, members and employees, as additional insureds" under those insurance policies.

101.     Advanced Countertop obtained the following commercial general liability policies from Zurich ("the Zurich Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| Zurich | SCP042972985 | 2/3/04-2/3/06 | Advanced Countertop | Centex |

102.     The Zurich Policies were endorsed to cover Centex as an "additional insured" with respect to liability arising out of Advanced Countertop's work.

103.     The Zurich Policies required Zurich to defend Centex against claims that create potential liability for covered property damage or bodily injury.

104.     The Zurich Policies were in effect during Advanced Countertop's operations at the Development.

**The *Carlan* Action**

105.     In or around June 2013, homeowners in the Development began forwarding pre-litigation notices of construction defects to Centex pursuant to NRS 40.645.

106.     On or about February 20, 2016, homeowners in the Development filed a construction defect complaint entitled *William and Jennifer Carlan, et al. v. Centex Homes, et al.*, Second Judicial District Court, Washoe County, Nevada, Case No. CV16-00380 ("*Carlan*"), against Centex alleging, among other things, that homes in the Development were defectively and

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

negligently designed, engineered, and constructed and incorporated defective materials, and that these defects caused property damage for which Centex is liable.

107.   The *Carlan* complaint, NRS Chapter 40 notices, and expert reports produced in the *Carlan* action allege that the work of Sierra, Riddo, Pinnacle, J&L, American, Mills, Cavallero, Hanson, Republic, Sunworld, All Seasons, JP, Silverado, and Premier (collectively, the "Centex Subcontractors") caused property damage to the work of others.

108.   The *Carlan* complaint, NRS Chapter 40 notices, and expert reports produced in the *Carlan* action include allegations that create the potential that the property damage resulting from the work of the Centex Subcontractors occurred during operations at the Development and while each of the Defendants' insurance policies was in place.

109.   Centex provided to each of the defendant insurers copies of the *Carlan* complaint, NRS Chapter 40 notices, and expert reports.  The defendant insurers were legally obligated to consider information contained in these materials, and any other information that a reasonable investigation by the insurers would have disclosed, when making their decision whether to defend Centex in the *Carlan* action.

110.   Centex has incurred and will continue to incur significant costs to defend the *Carlan* action, including, but not limited to, forensic, investigative, and repair costs; attorneys' fees; and other expenses.

**Each of The Defendant Insurers Breaches its Duty to Defend Centex in Carlan**

111.   Centex tendered the defense and indemnity of the *Carlan* claim to each of the Defendant insurers on or about November 4, 2015.

112.   On or about November 18, 2015, Lexington improperly denied Centex's claim and refused to defend Centex in the *Carlan* matter under the policies it issued to Sunworld.

113.   On or about November 23, 2015, Financial Pacific improperly denied Centex's claim and refused to defend Centex in the *Carlan* matter under the policies it issued to Pinnacle.

114.   On or about November 24, 2015, Lexington improperly denied Centex's claim and refused to defend Centex in the *Carlan* matter under the policies it issued to Republic.

115.   On or about February 18, 2016, Interstate improperly denied Centex's claim and

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

refused to defend Centex in the *Carlan* matter under the policies it issued to Mills.

116.     On or about March 29, 2016, Financial Pacific improperly denied Centex's claim and refused to defend Centex in the *Carlan* matter under the policies it issued to Sierra.

117.     On or about April 28, 2016, Lexington improperly denied Centex's claim and refused to defend Centex in the *Carlan* matter under the policies it issued to Hanson.

118.     On or about May 13, 2016, St. Paul improperly denied Centex's claim and refused to defend Centex in the *Carlan* matter under the policies it issued to Premier.

119.     On or about June 23, 2016, First Specialty improperly denied Centex's claim and refused to defend Centex in the *Carlan* matter under the policies it issued to J&L.

120.     On or about June 30, 2016, Scottsdale improperly denied Centex's claim and refused to defend Centex in the *Carlan* matter under the policies it issued to All Seasons.

121.     On or about December 14, 2016, Financial Pacific improperly denied Centex's claim and refused to defend Centex in the *Carlan* matter under the policies it issued to Riddo.

122.     On or about December 23, 2016, Navigators improperly denied Centex's claim and refused to defend Centex in the *Carlan* matter under the policies it issued to J&L.

123.     On or about March 10, 2017, Lexington improperly denied Centex's claim and refused to defend Centex in the *Carlan* matter under the policies it issued to Cavallero.

124.     On or about January 18, 2019, Greenwich, after failing for more than three years to even acknowledge Centex's tender, finally acknowledged its duty to defend Centex in the *Carlan* matter under the policies it issued to American, but asserted that its duty to defend is limited to a small share of Centex's defense costs.

125.     National Fire improperly denied Centex's claim and refused to defend Centex in the *Carlan* matter under the policies it issued to JP.

126.     National Fire improperly denied Centex's claim and refused to defend Centex in the *Carlan* matter under the policies it issued to Silverado.

127.     Navigators improperly denied Centex's claim and refused to defend Centex in the *Carlan* matter under the policies it issued to Silverado.

128.     Ironshore improperly denied Centex's claim and refused to defend Centex in the

*Carlan* matter under the policies it issued to Silverado.

129.    Pursuant to each of the Defendants' policies, each Defendant owes a duty to defend Centex; specifically, this duty obligates each Defendant to fund Centex's defense by paying attorneys' fees and litigation costs that Centex has incurred and will continue to incur defending the *Carlan* action.

130.    As a result of each Defendant's failure to acknowledge its duty to defend Centex and to fund Centex's defense, Centex has been forced to fund its own defense of the *Carlan* action.  Centex has spent approximately $500,000 doing so.  And because the *Carlan* action is still pending, Centex will continue to spend significant sums defending itself against the *Carlan* action.

**The _Maples_ Action**

131.    In or around September 2015, homeowners in the Silver Terraces development began forwarding pre-litigation notices of construction defects to Centex pursuant to NRS 40.645.

132.    On or about February 20, 2016, homeowners in the Silver Terraces development filed a construction defect complaint entitled *Nicholas Maples, et al. v. Centex Homes, et al.*, Second Judicial District Court, Washoe County, Nevada, Case No. CV16-00382 ("*Maples*"), against Centex alleging, among other things, that homes in the Development were defectively and negligently designed, engineered, and constructed and incorporated defective materials, and that these defects caused property damage for which Centex is liable.

133.    The *Maples* complaint, NRS Chapter 40 notices, and expert reports produced in the *Maples* action allege that the work of Advanced Countertop, Cavallero, Dan Mills, J&L, Premier, and Scarecrow (collectively, the "Centex Subcontractors") caused property damage to the work of others.

134.    The *Maples* complaint, NRS Chapter 40 notices, and expert reports produced in the *Maples* action include allegations that create the potential that the property damage resulting from the work of the Centex Subcontractors occurred during operations at the Development and while each of the Defendants' insurance policies was in place.

135.    Centex provided to each of the defendant insurers copies of the *Maples* complaint, NRS Chapter 40 notices, and expert reports.  The defendant insurers were legally obligated to

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

1  consider information contained in these materials, and any other information that a reasonable

2  investigation by the insurers would have disclosed, when making their decision whether to defend

3  Centex in the *Maples* action.

4        136.    Centex has incurred and will continue to incur significant costs to defend the

5  *Maples* action, including, but not limited to, forensic, investigative, and repair costs; attorneys'

6  fees; and other expenses.

7  **Each of The Defendant Insurers Breaches its Duty to Defend Centex in *Maples***

8        137.    Centex tendered the defense and indemnity of the *Maples* claim to each of the

9  Defendant insurers on or about September 14, 2015.

10        138.    On or about January 5, 2016, Zurich improperly denied Centex's claim and refused

11  to defend Centex in the *Maples* matter under the policies it issued to Advanced Countertop.

12        139.    On or about March 9, 2016, Lexington improperly denied Centex's claim and

13  refused to defend Centex in the *Maples* matter under the policies it issued to Cavallero.

14        140.    On or about December 8, 2015, Interstate improperly denied Centex's claim and

15  refused to defend Centex in the *Maples* matter under the policies it issued to Dan Mills.

16        141.    On or about September 25, 2015, First Specialty improperly denied Centex's claim

17  and refused to defend Centex in the *Maples*  matter under the policies it issued to J&L.

18        142.    On or about September 25, 2015, Navigators improperly denied Centex's claim and

19  refused to defend Centex in the *Maples* matter under the policies it issued to J&L.

20        143.    On or about May 13, 2016, St. Paul improperly denied Centex's claim and refused

21  to defend Centex in the *Maples* matter under the policies it issued to Premier.

22        144.    On or about September 18, 2016, Financial Pacific improperly denied Centex's

23  claim and refused to defend Centex in the *Maples* matter under the policies it issued to Scarecrow.

24        145.    Pursuant to each of the Defendants' policies, each Defendant owes a duty to defend

25  Centex; specifically, this duty obligates each Defendant to fund Centex's defense by paying

26  attorneys' fees and litigation costs that Centex has incurred and will continue to incur defending

27  the *Maples* action.

28        146.    As a result of each Defendant's failure to acknowledge its duty to defend Centex

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

and to fund Centex's defense, Centex has been forced to fund its own defense of the *Maples* action. Centex has spent approximately $500,000 doing so. And because the *Maples* action is still pending, Centex will continue to spend significant sums defending itself against the *Maples* action.

## FIRST CAUSE OF ACTION

### Breach of Contract

#### (By Centex Against All Defendants)

147. Centex realleges the allegations contained in paragraphs 1 through 146, inclusive, and incorporates them by reference as though fully set forth herein.

148. Centex requested that each Defendant defend Centex against the *Carlan* and *Maples* claim as described more fully above. Centex has performed all obligations owing under each of the policies in connection with its tender of defense, and Centex has satisfied all relevant conditions precedent.

149. Each of the Defendants has failed to discharge its contractual duty to defend Centex against the *Carlan* and *Maples* claims. More particularly, each Defendant breached its contract by (1) failing to promptly respond to Centex's tenders, and (2) refusing to fully defend Centex, or even defend Centex at all.

150. As a direct and proximate result of Defendants' conduct as alleged in this Complaint, Centex has been damaged and will continue to be damaged in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### Breach of the Implied Covenant of Good Faith and Fair Dealing

#### (By Centex Against All Defendants)

151. Centex realleges the allegations contained in paragraphs 1 through 150, inclusive, and incorporates them by reference as though fully set forth herein.

152. Defendants owe Centex a duty of good faith and fair dealing, obligating Defendants to put Centex's interests equal with or ahead of their own interests and to do nothing to deprive Centex of policy benefits.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

153.    Rather than honor their obligations, Defendants have instead sought to protect their own interests and have subordinated Centex's interests by refusing to discharge contractual duties without reasonable grounds or good cause.

154.    In addition, Defendants have acted with knowledge or reckless disregard of the lack of reasonable grounds or good cause for their conduct.

155.    Accordingly, Defendants have deprived Centex of its rights and benefits under their policies.  For example:

a.    Pursuant to clearly applicable law, Defendants have a duty to promptly investigate and respond to Centex's tenders and indicate whether they would defend Centex against the *Carlan* and *Maples* claims.  Defendants understand and are fully aware of this duty.  Despite their knowledge of this obligation, Defendants have failed to respond to Centex's tenders in a timely fashion.  On information and belief, these delays violate Defendants' own internal policies.  To further delay making coverage decisions and avoid assuming the financial burden of defending Centex, on some occasions Defendants requested documents that Centex had already supplied to Defendants so as to force Centex to continue defending itself and incur costs without Defendants' support.  Defendants delayed rendering coverage decisions in conscious disregard of the risk that these delays would jeopardize Centex's ability to adequately defend itself against the *Carlan* and *Maples* claims, and would jeopardize Centex's ability to settle those matters.  Defendants' decisions to delay responding to Centex's tenders were motivated by a desire to unfairly enhance their own profits by avoiding contractual obligations and ignoring the contractual rights and economic interests of Centex.  Defendants acted in a deliberate and concerted fashion to achieve this self-serving economic objective.  Defendants' conduct in this regard tortiously breaches the duty of good faith and fair dealing owed to Centex, and recklessly disregards Centex's economic and property rights.

b.    Pursuant to clearly applicable law, Defendants have a duty to defend additional insureds, like Centex, for claims alleging potential for liability arising out of the work or ongoing operations of their named insureds.  Defendants understand and are fully aware of this duty.  Despite knowledge of this obligation, Defendants routinely attempt to avoid this obligation

by taking arbitrary and capricious coverage positions.  More specifically, despite knowledge of the terms of their insurance policies, additional-insured endorsements, the relevant case law, and the facts alleged in *Carlan* and *Maples* actions, Defendants refused to acknowledge their duty to defend Centex against the *Carlan* and *Maples* claims, even though many of the Defendants readily acknowledged their duty to defend their named insureds in each of these cases.  Defendants consistently and intentionally treat Centex and other additional insureds differently from their named insureds with respect to the thoroughness (or lack thereof) of their investigation, the coverage defenses they assert, and their willingness to acknowledge the duties they owe.  Likewise, Defendants took coverage positions in the *Carlan* and *Maples* matters that are inconsistent with positions they took in other similar cases and situations.  Defendants' decisions to deny or delay responding to Centex's tenders were motivated by a desire to enhance unfairly their own profits by avoiding contractual obligations and ignoring the contractual rights and economic interests of Centex.  Defendants acted in a deliberate and concerted fashion to achieve this self-serving economic objective.  Defendants' conduct in this regard tortiously breaches the duty of good faith and fair dealing owed to Centex, and recklessly disregards Centex's economic and property rights.

        c.      Pursuant to clearly applicable law, Defendants have a duty to fully defend Centex, as opposed to providing Centex only with a proportional or partial defense based on what the insurers argue is the limited liability of their named insureds.  Defendants understand and are fully aware of this duty.  Despite Defendants' knowledge that they have a duty to fully defend Centex against the *Carlan* and *Maples* claims pursuant to clearly applicable law, Defendants unreasonably refused to do so.  These refusals were motivated by a desire to enhance unfairly Defendants' own profits by avoiding contractual obligations and ignoring the contractual rights and economic interests of Centex.  Defendants acted in a deliberate and concerted fashion to achieve this self-serving economic objective.  Defendants' conduct in this regard tortiously breaches the duty of good faith and fair dealing owed to Centex, and recklessly disregards Centex's economic and property rights.

        156.    Defendants' conduct as alleged in this Complaint is part of a pattern of unfair

claims practices intentionally engaged in by each of the Defendants to enhance unfairly their own profits by avoiding contractual obligations and ignoring the contractual rights and economic interests of Centex and other additional insureds.  These systematic practices include (1) failing to respond promptly to tenders from additional insureds, (2) wrongfully denying additional insureds coverage owed under policies, and (3) refusing to supply a full defense to additional insureds as required by law and instead trying to limit coverage obligations to funding only a small fraction of the additional insured's defense.

157.    As a direct and proximate result of Defendants' tortious breach of the duty of good faith and fair dealing, Centex has suffered damages in an amount to be proven at trial, including without limitation, the loss of use of operating capital diverted to defending the *Carlan* and *Maples* actions, and legal costs incurred to obtain the benefits owed by the Defendants under their insurance policies.

158.    In addition, Defendants' conduct as alleged in this Complaint is despicable and has been carried out in willful and conscious disregard of Centex's rights and economic interests, and is malicious, fraudulent and oppressive.  Accordingly, Defendants' conduct entitles Centex to punitive damages.

159.    Defendants' malicious, fraudulent, and oppressive conduct includes, for example:

a.    As described above, Defendants were fully aware of their duty to promptly investigate and respond to Centex's tenders and indicate whether Defendants would defend Centex against the *Carlan* and *Maples* claims, but Defendants delayed responding to Centex's tenders and ignored Centex's numerous requests they do so.  Defendants knew that failing to promptly respond to Centex's tenders and defend it would violate Centex's contractual rights and jeopardize Centex's ability to successfully defend itself against the *Carlan* and *Maples* actions, but Defendants did so anyway in willful and conscious disregard of Centex's rights.

b.    As described above, Defendants are fully aware of their duty to defend additional insureds, like Centex, against claims alleging potential liability arising out of the work of their named insureds, but routinely attempt to avoid these obligations by treating additional insured differently from named insureds.  Defendants know this behavior violates the rights of

1  additional insureds, like Centex, but Defendants intentionally try to deprive additional insureds,

2  like Centex, of policy benefits in order to unfairly enhance their own profits.

3        c.        As described above, Defendants were fully aware of their duty to fully

4  defend Centex as opposed to only providing a proportional or partial defense based on what they

5  contend is the limited liability of their named insureds.  Defendants knew that failing to provide

6  Centex with a full defense would violate its contractual rights and may well harm Centex, but

7  Defendants nonetheless claimed their duties were limited, and refused to fully discharge their duty

8  to defend – and in most instances, refused to defend at all – in willful violation of their contractual

9  duties.

10                        **THIRD CAUSE OF ACTION**

11          **Violations of Nevada's Unfair Claims Settlement Practices Action,**

12                    **Nev.  Rev. Stat. Ann. § 686A.310**

13                  (By Centex Against All Defendants)

14       160.    Centex realleges the allegations contained in paragraphs 1 through 159, inclusive,

15  and incorporates them by reference as though fully set forth herein.

16       161.    Defendants' conduct constitutes a violation of one or more of the following sub-

17  sections of Nev. Rev. Stat. Ann. § 686A.310:

18        a.        Failing to acknowledge and act reasonably promptly upon communications

19  with respect to claims arising under insurance policies.

20        b.        Failing to adopt and implement reasonable standards for the prompt

21  investigation and processing of claims under insurance policies.

22        c.        Failing to affirm or deny coverage of claims within a reasonable time after

23  proof of loss requirements have been completed and submitted by the insured.

24        d.        Failing to effectuate prompt, fair and equitable settlements of claims in

25  which liability of the insurer has become reasonably clear.

26        e.        Compelling insureds to institute litigation to recover amounts due under an

27  insurance policy by offering substantially less than the amounts ultimately recovered in actions

28  brought by such insureds when the insureds have made claims for amounts reasonably similar to

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

1    the amounts ultimately recovered.

2          f.      On information and belief, Defendants have engaged in other conduct in the

3    handling of the *Carlan* and *Maples* claims that constitutes unfair practices under other provisions

4    of NRS 686A.310.

5          162.    As a direct and proximate result of Defendants' violations of Nev. Rev. Stat. Ann.

6    § 686A.310, Centex has sustained damages in an amount within the jurisdictional limits of this

7    Court.

8          163.    As a direct and proximate result of Defendants' violations of Nev. Rev. Stat. Ann.

9    § 686A.310, Centex has incurred attorneys' fees, court costs and other expenses in bringing this

10   action.

11                        **FOURTH CAUSE OF ACTION**

12                          **(Declaratory Relief)**

13         164.    Centex realleges the allegations contained in paragraphs 1 through 162, inclusive,

14   and incorporates them by reference as though fully set forth herein.

15         165.    An actual controversy has arisen and now exists between Centex, on the one hand,

16   and Defendants, on the other hand, in that Centex contends that under the Interstate, Lexington,

17   Federal, and Underwriters policies each Defendant owes a separate and independent duty to

18   promptly and fully defend Centex in the *Carlan* and *Maples* matters.

19         166.    Centex is informed and believes that Defendants contend otherwise.

20         167.    Centex desires a judicial determination as follows:

21               a.   that each Defendant owes a separate and independent duty to defend Centex

22   against the *Carlan* and *Maples* matters;

23               b.   that the scope of this duty is to provide Centex with an immediate and full

24   defense;

25               c.   that the obligations of any one Defendant to provide Centex with an

26   immediate and full defense is not diminished or reduced when other Defendants owe Centex this

27   same duty.

28         168.    A declaratory judgment is both proper and necessary so that the respective rights,

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

1   duties, and obligations of Centex and Defendants may be determined.

2                                   **PRAYER**

3       WHEREFORE, Centex prays for judgment against Defendants awarding Centex,

4       1.     **FIRST CAUSE OF ACTION**:

5              a.     general and specific damages in an amount to be proven at trial;

6              b.     all costs and expenses at the full extent permitted by law;

7              c.     pre-judgment interest and post-judgment interest to the full extent permitted

8       by law;

9              d.     attorneys' fees to the extent recoverable by applicable law; and

10             e.     such other and further relief as the Court deems fair and proper.

11      2.     **SECOND CAUSE OF ACTION**:

12             a.     general and specific damages in an amount to be proven at trial;

13             b.     punitive damages at the full extent permitted by law;

14             c.     all costs and expenses at the full extent permitted by law;

15             d.     pre-judgment interest and post-judgment interest at the full extent permitted

16      by law;

17             e.     attorneys' fees to the extent recoverable by applicable law; and

18             f.     such other and further relief as the Court deems fair and proper.

19      3.     **THIRD CAUSE OF ACTION**:

20             a.     general and specific damages in an amount to be proven at trial;

21             b.     punitive damages at the full extent permitted by law;

22             c.     all costs and expenses at the full extent permitted by law;

23             d.     pre-judgment interest and post-judgment interest at the full extent permitted

24      by law;

25             e.     attorneys' fees to the extent recoverable by applicable law; and

26             f.     such other and further relief as the Court deems fair and proper.

27      4.     **FOURTH CAUSE OF ACTION**:

28             a.     declaratory relief as described above;

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

b.      all costs and expenses at the full extent permitted by law;

c.      pre-judgment interest and post-judgment interest at the full extent permitted by law;

d.      attorneys' fees to the extent recoverable by applicable law; and

e.      such other and further relief as the Court deems fair and proper.

## **JURY DEMAND**

Centex hereby demands a trial by jury.

DATED:  June 17, 2019              Respectfully submitted,
                                   PAYNE & FEARS LLP


By      */s/ Sarah J. Odia*
        SCOTT S. THOMAS, NV Bar No. 7937
        SARAH J. ODIA, NV Bar No. 11053
        6385 S. Rainbow Blvd., Suite 220
        Las Vegas, Nevada 89118
        Tel. (702) 851-0300

        Attorneys for CENTEX HOMES

4832-7001-2553.1

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300